John W. NORMAN et al.,
Appellants,

v.

MISSOURI PACIFIC RAILROAD, a corporation, Appellee.

No. 74-1102.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1974.

Decided June 4, 1974.

Rehearing and Rehearing En Banc Denied July 10, 1974.

Barbara Morris, New York City, for appellants.

G. Ross Smith, Little Rock, Ark., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

ROSS, Circuit Judge.

This action, alleging deprivation of rights guaranteed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and by 42 U.S.C. §§ 1981 and 1983, was instituted in 1966 by ten black persons individually and as representatives of the class of train porters employed by the Missouri Pacific Railroad. An amended complaint deleted the class action counts and the jurisdictional claims under §§ 1981 and 1983. At issue was the charge that Missouri Pacific Railroad had racially discriminated in the initial assignment of the ten plaintiffs to the craft of train porter and that it continued to so discriminate by failing to afford train porters all the rights and privileges afforded members of the craft of brakemen. That action was dismissed in the lower court on jurisdictional grounds. On appeal to this Court, we vacated the judgment and remanded the matter to the district court.

Norman v. Missouri Pacific R. R., 414 F.2d 73, 85 (8th Cir. 1969).

After remand, the case remained on the docket of the district court with the consent of the parties pending final resolution of United States v. St. Louis-San Francisco Ry., 464 F.2d 301 (8th Cir. 1972), cert. denied, 409 U.S. 1107, 93 S. Ct. 900, 34 L.Ed.2d 687 (1973) [Frisco], a factually similar case raising many of the same legal issues as the Norman complaint. Ultimate resolution of most of the issues in the instant case was accomplished through a stipulation of the parties which essentially followed the remedy imposed in *Frisco*:

[E]ligible train porters are to be afforded the opportunity to transfer crafts and to take with them carryover seniority. Some of the ten named plaintiffs herein have already transferred to the craft of brakemen and they will be entitled to have added to their brakeman seniority one-half of the seniority previously acquired while serving as train porters. The parties have also agreed that *Frisco* precludes an award herein of back pay.

However, the parties failed to agree on the resolution of the issue of retirement benefits of some of the plaintiffs and the question of attorneys fees. Those issues were submitted to the district court for its determination. Attorneys fees were awarded to the plaintiffs by the court and that determination has not been appealed to this Court. The claim by train porters who have now retired but who, had they been earlier permitted to transfer to the craft of brakemen, would allegedly have been the recipients of enhanced retirement benefits, was determined adversely to the plaintiffs. The district court found that the claim for increased retirement benefits was indistinguishable from a claim for back pay and that, accordingly, the rationale of *Frisco* foreclosed such relief. For

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

the reasons hereinafter expressed, we affirm.

Section 706(g) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g) provides in part:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

.    .    .    .    .    .

Other circuits have found back pay awards to be appropriate remedies for redress of violations of Title VII. *See, e. g.,* Head v. Timken Roller Bearing, 486 F.2d 870, 878 (6th Cir. 1973); Moody v. Albemarle Paper Co., 474 F.2d 134, 142 (4th Cir. 1973); United States v. Hayes International Corp., 456 F.2d 112, 121 (5th Cir. 1972); Robinson v. Lorillard, 444 F.2d 791, 802 (4th Cir.), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 721 (7th Cir. 1969). The requested relief here is technically not a request for back pay. However, our position enunciated in *Frisco* on the propriety of back pay awards under similar facts controls the result here.

In *Frisco*, this Court found that race had been a factor in the Railroad's hiring practices and that it had accounted for the effective segregation of whites as brakemen and blacks as porters. Since the two crafts were not functional equivalents, merger was held to be an inappropriate remedy. Instead, we determined that if the former train por-

ters could pass the physical examination then given to brakemen of similar age and were determined to be qualified for brakemen positions after completion of the mandated free training course, the Railroad had an obligation to hire such employees as brakemen. One-half seniority was ordered credited to all reemployed former train porters. Back pay, however, was denied. Two grounds were advanced for the back pay conclusion: the employer had not acted in bad faith in refusing to implement the government's proposed remedy and "it would be impossible to determine on what date those train porters who are now physically unqualified to become brakemen, became physically unable to perform." United States v. St. Louis-San Francisco Ry., *supra*, 464 F.2d at 311.

Reliance upon an employer's good or bad faith in considering the propriety of back pay awards under Title VII has been seriously questioned by other courts. Some circuits have held that good faith conduct by an employer does not insulate him from awards for back pay. Rather, they have concluded, the requirement of 42 U.S.C. § 2000e–5(g), *supra*, for "intentional" conduct simply imports that the defendant meant to do what he did, that is, that his employment practice was not accidental. Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002, 1006 (9th Cir. 1972); Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1201 (7th Cir. 1969), cert. denied, 404 U.S. 991, 92 S. Ct. 536, 30 L.Ed.2d 543 (1971); Jones v. Lee Way Motor Freight, Inc., 431 F. 2d 245, 250 (10th Cir. 1970), cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L. Ed.2d 237 (1971); Local 189 United Papermakers & Paperworkers v. United States, 412 F.2d 980, 996 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S. Ct. 926, 25 L.Ed.2d 100 (1970). *See also* Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In United States v. N. L. Industries, Inc., 479 F.2d 354, 380 (8th

Cir. 1973), this Court refused a back pay award noting as follows:

> In this Circuit the law in regard to backpay has not been adequately defined to provide employers and unions with notice that they will be liable for a discriminatee's economic losses due to continuation of past or present discriminatory policies. However, where an employer and union have had ample opportunity to remedy an unlawful employment practice, they should be put on notice that they will be held responsible for the economic losses accruing to the parties injured by such unlawful employment practices.

This indication of a possible change in our policy as to cases originating subsequent to United States v. N. L. Industries, Inc., *supra*, does not mandate an award in this case which originated prior thereto. However, even a contrary position regarding the relevance of bad faith would not repudiate our determination in *Frisco* nor affect *Frisco's* applicability to this case, for an adequate and independent ground sustains the result reached therein.

The second basis for the denial of back pay in *Frisco* was founded on the nonidentity of the two crafts and attendant problems thereby created. Additional qualifications were essential to the remedial right to membership in the class of brakemen. In order to demonstrate entitlement to relief, each plaintiff was required to establish that he possessed the qualifications for a brakeman. Absent the possession of those qualifications, a plaintiff had not been the subject of the alleged racial discrimination. Back pay was refused because there was no ascertainable standard for judging whether present unqualified train porters would otherwise have been qualified during the course of their employment to be brakemen but for racial discrimination. No standard could determine the right to back pay itself nor the date from which to compute any right to back pay. Courts that have found back pay awards to be appropriate remedies in Title VII actions have generally recognized that such awards should be limited to actual damages, Head v. Timken Roller Bearing, *supra*, 486 F.2d at 878; Bowe v. Colgate-Palmolive Co., *supra*, 416 F.2d at 721; may be avoided by business necessity or other special circumstances, Head v. Timken Roller Bearing, *supra*, 486 F.2d at 877; Moody v. Albemarle Paper Co., *supra*, 474 F.2d at 142; Schaeffer v. San Diego Yellow Cabs, Inc., *supra*, 462 F.2d at 1006; and are especially appropriate where they are based on a fixed wage rate and ascertainable periods of work, Robinson v. Lorillard, *supra*, 444 F.2d at 804. The keystone to the *Frisco* result, then, was the impropriety of remedies based on retrospective and indefinite standards.

The same problems underly the question before us. The parties here have likewise recognized the functional nonequivalence of the two crafts. *Eligible* train porters were permitted a right to transfer crafts. However, some train porters who are now retired might never have been qualified to be brakemen even without any racial discrimination. They are not thus subjects of past discrimination and are not entitled to relief in the form of enhanced retirement benefits. Other train porters now retired who are unqualified to be brakemen, cannot establish the retrospective date of the onset of their nonqualification with sufficient certainty to permit the imposition of additional retirement benefits. Because retrospective qualification for the brakemen craft is impossible to measure in the present, no ascertainable standard exists to govern the past right to have been a brakeman nor to establish a date from which any possible retirement benefits could have been computed.

We are bound by the determination of this Court sitting *en banc*. This panel does not have the authority to overrule the Circuit's position expressed in *Frisco*. Because the *Frisco* plaintiffs' request for back pay is logically indistinguishable from the instant plaintiffs' request for enhanced retirement benefits, *Frisco* controls the result reached here.

598

Enhanced retirement benefits are therefore an inappropriate remedy for these retired train porters.

Plaintiffs also contend that the summary disposition of the claim for enhanced retirement benefits denied them the opportunity to offer factual evidence and deprived them of due process. The tendered evidence purportedly related to the fact of racially disproportionate retirement benefits of the two crafts. However, as discussed above, the remedy affords entry into a craft requiring different qualifications; entitlement to the relief rests upon each plaintiff's ability to demonstrate possession of those qualifications; and it is impossible to prove the fact or date of retrospective qualification by those no longer qualified or retired. Those facts and the *Frisco* rationale disapproving speculative remedies, render the right to enhanced retirement benefits an inappropriate remedy for these retired porters. Evidence relating to any factual disparities in retirement benefits of the two crafts would therefore be irrelevant.

The decision of the district court is affirmed.