Henry DOBBS et al.,
Plaintiffs-Appellants,

v.

CITY OF ATLANTA, GEORGIA, et al.,
Defendants-Appellees.

No. 77–2668.

United States Court of Appeals,
Fifth Circuit.

Nov. 14, 1979.

Richard L. Stumm, B. Lee Crawford, Jr., Atlanta, Ga., Roy E. Barnes, Marietta, Ga., for plaintiffs-appellants.

Ferrin Mathews, City Atty., Mary Carole Cooney, Atlanta, Ga., for City of Atlanta, defendants-appellees.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

This Title VII[1] class action attacks the disparity between three pension plans maintained by the City of Atlanta for its employees. Appellants represent those black employees and recipients of retirement benefits to whom the general employee pension plan applies. The plans for police and for firefighters are more attractive.[2] Appellants complain of the different treatment on the ground that the City historically funneled black employees exclusively or predominantly into the general employees cohort, thereby denying to them the subsequent enjoyment of police or firefighters' pensions. The district court granted the City's Fed.R.Civ.P. 12(b)(6) motion to dis-

---

1. 42 U.S.C. § 2000e et seq. (1976).

2. While all three plans call for a contribution of 6% of the employees' gross earnings, the police and firefighters' plans are alleged to permit retirement at an earlier age and to return more lucrative payments after retirement.

miss for failure to state a claim upon which relief could be granted. We affirm.[3]

The touchstone of the amended complaint lies in paragraph 12.[4] While it is not clear whether the past discriminatory hiring practices are alleged to have occurred prior to or subsequent to the date cities came within the purview of Title VII (March 1972), the complaint clearly fails to claim that the City currently engages in discriminatory hiring practices. It is appellants' complaint that the present effect of maintaining the separate pension plans perpetuates the effects of past hiring discrimination.

The controlling Supreme Court pronouncements on the perpetuation of prior discrimination are in *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) and *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *Evans* emphasized that the mere continuity of impact from prior discrimination is insufficient to justify relief under Title VII. Instead, "the critical question is whether any present *violation* exists." 431 U.S. at 558, 97 S.Ct. at 1889 (emphasis in the original). No adjustment of seniority rights was required in *Evans* because that system presented no barrier based upon sex at the time of the suit and the continuing impact on respondent's pay and *fringe benefits* fell short of an actionable wrong.

The distinction between *Evans* and *Teamsters* is that in *Teamsters* the current employment choices were impacted by seniority and the prior discriminatory hiring. There was a present violation in *Teamsters* because racial minorities were prevented from improving their *employment* prospects at the time suit was brought. The Court described the dilemma as follows:

For purposes of calculating benefits, such as vacations, pensions, and other fringe benefits, an employee's seniority under this system runs from the date he joins the company, and takes into account his total service in all jobs and bargaining units. For competitive purposes, however, such as determining the order in which employees may bid for particular jobs, are laid off, or are recalled from layoff, it is bargaining-unit seniority that controls. Thus, a line driver's seniority, for purposes of bidding for particular runs and protection against layoff, takes into account only the length of time he has been a line driver at a particular terminal. The practical effect is that a city driver or serviceman who transfers to a line-driver job must forfeit all the competitive seniority he has accumulated in his previous bargaining unit and start at the bottom of the line drivers' "board." The vice of this arrangement, as found by the District Court and the Court of Appeals, was that it "locked" minority workers into inferior jobs and perpetuated pri-

---

**3.** We note that one item in the appellants' prayer for relief seeks a complete equalization of all aspects of the pension plans for the three groups. Such a remedy would be inapposite even if plaintiffs had successfully stated a claim for other relief. *See Norman v. Missouri Pac. R. R.*, 497 F.2d 594 (8th Cir. 1974), *cert. denied*, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). The hazards and stress involved in police and firefighters' work justifies distinct employee selection as well as earlier retirement and more generous retirement income.

**4.** Paragraph 12 follows:

The City of Atlanta has in the *past* engaged in racial discrimination whereby it would employ blacks only as General Employees and would not, because of its racial discrimination practices, employ blacks as policemen or firemen. Plaintiffs and the class they represent are victims of said racial discrmination [sic] practices by defendant because they, as a result of defendant's said racial discrimination, were hired and assigned by defendant City of Atlanta into the black General Employees group rather than the white policemen or firemen groups for which positions they were qualified absent racial discrimination by defendant City of Atlanta. The *present* employment practices of defendant City of Atlanta *in continuing to maintain said separate benefit plans with said benefits disparity perpetuate the effects of said past racial discrimination* against plaintiffs and the class they represent and therefore violate Title VII of the Civil Rights Act, as amended. [emphasis supplied]

or discrimination by discouraging transfers to jobs as line drivers. While the disincentive applied to all workers, including whites, it was Negroes and Spanish-surnamed persons who, those courts found, suffered the most because many of them had been denied the equal opportunity to become line drivers when they were initially hired, whereas whites either had not sought or were refused line-driver positions for reasons unrelated to their race or national origin. [footnotes omitted]

431 U.S. 343–44, 97 S.Ct. 1858. Thus, even though this seniority system was racially neutral on its face, the combined effect of earlier discriminatory job placement and the seniority system produced a present violation of continuing nature under Title VII.

Two cases involving allegations of continuing violations have been decided in this circuit since *Teamsters* and *Evans*. *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978), involved an employer which allocated jobs on the basis of race at the time suit was filed. The company had a policy of excluding blacks from the more desirable craft jobs and the apprenticeship program which led to those jobs. The court found that while the testing, educational, and age requirements for the apprenticeship program were facially neutral, they had a disproportionate negative impact on blacks. Further, the requirements were not shown to be related to job performance or business necessity. This presented clear examples of current discriminatory employment practices based upon race. Similarly, the facially neutral seniority system which inhibited current job transfers, and consequently reinforced prior job stratification, evidenced a prima facie case of *present* discrimination based upon race.

*Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979), (*"Pettway IV"*), involved an employer which had segregated employees by race until 1961. The segregated profile was carried forward through 1964 when the employer began utilizing testing and educational requirements to discriminate against blacks. These practices were held to be illegal in *Pettway III*, 494 F.2d 211 (5th Cir. 1974). The company seniority system, which was neutral on its face, came under post-*Evans* scrutiny in *Pettway IV* after having been held violative of Title VII in *Pettway III*. The court again found that the present effect of the seniority provision was to prevent black employees from improving their position by preventing any current transfer. This established the prima facie statutory violation.

The pension plans now under attack are neutral and rational. The applicability of the different provisions does not depend on race but upon the function in which the employee served. The risks and demands involved in police and firefighters' work differentiates them from those in general employment and justifies earlier retirement provisions and more lucrative payments upon retirement. *See generally, Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Firemen's and Policemen's Civil Service Comm'n v. Wells*, 157 Tex. 644, 306 S.W.2d 895, 897 (1957); *Henry v. City of Los Angeles*, 201 Cal.App.2d 299, 20 Cal.Rptr. 440, 452 (Dist.Ct.App.1962).

Appellants do not claim that the pension plans of the City of Atlanta presently discriminate on the basis of race or that they prevent blacks from acquiring better jobs. They complain, instead, that the impact of former discrimination is still being felt today in terms of disparate pension treatment. That charge is insufficient under *Evans*. *Alston v. Allegheny Steel Corp.*, 449 F.Supp. 553 (W.D.Pa.1978). *See also Bracamontes v. Amstar Corp.*, 576 F.2d 61 (5th Cir. 1978); *McArthur v. Southern Airways, Inc.*, 569 F.2d 276 (5th Cir. 1978). Other circuits have agreed that prior discrimination which results in diminished income at a later date is not adequate to state a Title VII claim at that later date under a perpetuation theory. *Trabucco v. Delta Airlines*, 590 F.2d 315 (6th Cir. 1979); *Far-*

*ris v. Bd. of Ed. of City of St. Louis,* 576 F.2d 765 (8th Cir. 1978); *Masco v. United Airlines,* 574 F.2d 1127 (3d Cir. 1978).

Because appellants fail to state a claim upon which relief can be granted, the dismissal was correct. The judgment of the district court is AFFIRMED.