Shelly EISON

v.

CITY OF KNOXVILLE, Randall E. Tyree, Harold Shipley, Robert A. Marshall and Gerald R. King.

Civ. No. 3–83–52.

United States District Court,
E.D. Tennessee, N.D.

July 28, 1983.

---

**12**

Willis Jackson, Jr., Knoxville, Tenn., for plaintiff.

Robert H. Watson, Jr., Sp. Counsel, Jon G. Roach, City Atty., Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

This is a sex discrimination case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff claims that the physical qualification tests used by the Knoxville Police Department are discriminatory in their design, implementation, and application. She says the tests have a disparate impact on women cadets at the Knoxville Police Academy.

Plaintiff was hired by the City of Knoxville as a police cadet and enrolled in the Police Academy on November 11, 1981. Nine women and thirty-seven men were enrolled in plaintiff's class.

The Police Academy developed physical tests to measure fitness and establish minimum requirements to become a police officer. The tests consisted of sit-ups, push-ups, leg lifts, squat thrusts, pull-ups, and a 2-mile run. The push-ups and pull-ups were modified for the women cadets. Sergeant Gary Shaeffer, a veteran police officer and instructor at the Police Academy, was primarily responsible for the design, scoring, and implementation of the examinations. He designed the tests to measure attributes deemed desirable in police officers. These attributes included upper body strength, abdominal strength, leg strength, and endurance. The projected test goals and passing scores were determined through the evaluation of physical tests given to various incumbent law enforcement officers. Modification ratios for women's exercises were based on similar observations and Federal Bureau of Investigation testing procedures. The Police Academy has administered the particular physical training exercises and tests at issue here during three training academies: two in 1979 and plaintiff's in 1982. A total of 86 cadets, including 67 men and 19 women, have taken these examinations.

Plaintiff along with the other cadets took a pre-training physical test on November 20, 1981. On January 8, 1982 the cadets took a mid-term test. At the time of the mid-term physical test, plaintiff claimed she was suffering from an elbow injury sustained during her police training. Sergeant Shaeffer offered her the opportunity to take the test one to three days later. She elected to take the test on the date scheduled.

Plaintiff received an overall score of 54.3 percent on the mid-term physical test. Pursuant to Academy policy, all recruits scoring below 65 percent were terminated from employment with the police department. This included plaintiff. Three men and two other women also failed the mid-term test. This was the first time anyone had ever failed the physical fitness portion of the Police Academy training, although substantially the same test was given to the 1979 recruits.

Plaintiff only challenges the physical qualification test used by the City to determine fitness of its police officers. The test on its face is neutral in its application to men and women. An analysis of the test under the doctrine of disparate impact is therefore necessary. *See Equal Employment Opportunity Commission v. Ball Corp.,* 661 F.2d 531, 540 (6th Cir.1981). The Sixth Circuit in *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.* recently restated the burdens of production and proof established by prior Title VII cases. 690 F.2d 88 (6th Cir.1982):

Under the disparate impact theory, a plaintiff must produce evidence demonstrating that the employment practice in question selects applicants for employment, reemployment or promotion in a racial pattern which is significantly different from the general pool of applicants. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425 [95 S.Ct. 2362, 2375, 45 L.Ed.2d 280] (1975). Once the plaintiff has met this burden, an employer must demonstrate that the employment practice is job related. *Id.; see also McDonnell Douglas Corp. v. Green,* 411 U.S. [792] at 802 n. 14 [93 S.Ct. 1817, 1824 n. 14, 36 L.Ed.2d 668]. As noted by this Court in *Head v. Timken Roller Bearing Co.,* 486 F.2d 870 (6th Cir.1973):

> The test is whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business. Thus, the business purpose must be sufficiently compelling to override any racial impact; the challenged practice must effectively carry out the business purpose it is alleged to serve.... *Id.* at 879 (quoting *Robinson v. Lorillard Co.,* 444 F.2d 791, 798 (4th Cir.), *cert. denied,* 404 U.S. 1006 [92 S.Ct. 573, 30 L.Ed.2d 665] (1971)). Finally, if an employer does carry his burden and demonstrates that the "test" is job related, the plaintiff must be permitted an opportunity to prove that another practice would serve the employer's business needs equally as well but without the undesirable racial impact. *Albemarle Paper Co.,* 422 U.S. at 425 [95 S.Ct. at 2375]. Such proof is evidence that the employment practice is being used merely as a pretext for discrimination. *Id.*

*Id.* at 93–94. As in *Rowe,* the threshold question, is "whether the plaintiff produced sufficient evidence to establish a *prima facie* case in order to require the defendant to demonstrate that the employment practice which produced such an impact is job related." *Id.* Statistics are often used for this purpose.

The Equal Employment Opportunity Commission has established guidelines for measuring the disparate impact of tests and policies. The "four-fifths rule" is one such guideline. *See* 29 C.F.R. § 1607.4D. The four-fifths rule compares whether the selection rate for one group (women in this case) is less than four-fifths or eighty percent of the selection rate of a comparison group (men in this case). Under this "rule of thumb" a rate lower than four-fifths is regarded as evidence of adverse impact. *Id.* Applying the four-fifths rule to all Police Academy cadets who have taken the tests at issue here, there is no adverse impact on women. If plaintiff's 1982 class alone is compared, however, the women's selection rate is less than four-fifths of the men's selection rate. The Court is of the opinion that all cadets who have taken the test should be included in the sample for comparison. Accordingly, we do not believe plaintiff has established her prima facie case of disparate treatment of women under the four-fifths rule or otherwise.

Even if plaintiff has established her prima facie case, however, the City has demonstrated that its physical tests are job related. *See Albemarle Paper Co.,* 422 U.S. at 425, 95 S.Ct. at 2375. All proof showed that the exercises used on the test were related to physical traits deemed necessary in police officers. The test scores were determined by evaluations of the performances of incumbent officers on similar tests. The quantification of performance was therefore not arbitrary. The tests were sufficiently validated in their formulation.

Having found the tests are job related, plaintiff bore the burden of proving that another practice would serve the City's purpose equally as well without any undesirable impact on women. Plaintiff has not done so here. She has merely stated that she thought the test was unfair. A viable alternative has not been presented.

Finally, the Court notes that plaintiff testified that but for her elbow injury, she would have scored higher on her mid-term examination. This testimony rebuts any claim that she failed the test because it was

biased against women. We believe plaintiff's failure probably stemmed from her physical condition at the time of the test, rather than any unlawful sex discrimination. While the City's failure to give plaintiff a "second chance" might seem harsh, this is an area within its discretion when discrimination is not involved.

In accordance with the foregoing, it is ORDERED that judgment enter in favor of defendants. It is further ORDERED that this case be, and the same hereby is, dismissed.

Order Accordingly.