524 F.Supp. 1009 (1981)
William MONROE, Jr., Plaintiff,
v.
ST. LOUIS METROPOLITAN POLICE DEPARTMENT, et al., Defendants.
No. 79-463C(3).
United States District Court, E. D. Missouri, E. D.
September 30, 1981.
*1010 William Monroe, Jr., pro se. Appointed Atty. at time of Judgment.
Sidney Rubin, St. Louis, Mo. (Court-appointed), for plaintiff.
Thomas Connelly, City Counselor and Judith A. Ronzio, Asst. City Counselor, St. Louis, Mo., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits after trial to the Court. Plaintiff brought this action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., claiming that defendants discriminated against him by failing to rehire him because of his race. After consideration of the pleadings, the testimony and the exhibits introduced at trial, the parties' briefs, and the applicable law, the Court makes the following findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52.

FINDINGS OF FACT
Plaintiff, William Monroe, Jr., is a black male who is a resident of St. Louis County, Missouri and a citizen of the United States.
Defendant, Board of Police Commissioners of the City of St. Louis (Board), is composed of defendants Homer Sayad, Charles Valier, Thomas Purcell, Robert Wintersmith, and Vincent C. Schoemehl, Jr., the Mayor of the City of St. Louis, ex officio.[1] Defendant Board is an agency of the State of Missouri empowered to hire police officers to serve on the St. Louis Metropolitan Police Department. Defendant is an employer of more than 15 employees in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(b).
Defendant James A. Roche, Jr. is secretary to the Board of Police Commissioners. He is not a member of said Board and he has no authority to vote on matters submitted to the Board for decision.
Defendant Eugene Camp is Chief of Police of the Metropolitan Police Department of the City of St. Louis. He is not a member of said Board and he has no authority to vote on matters submitted to the Board for decision.
Defendant City of St. Louis is a municipal corporation with no authority to employ officers to serve in the St. Louis Metropolitan Police Department.
Plaintiff was employed by defendant Board first as a probationary patrolman *1011 and then as a commissioned police officer from August 28, 1967 to November 29, 1975.
During his term as a police officer, there were three incidents which plaintiff believes constitute evidence of racial discrimination:
1) In 1972 or 1973, plaintiff heard the police department's dispatcher use the word "nigger" twice in a broadcast over the police radio band. When plaintiff complained to his supervisor about the use of the word, he was advised not to pursue the matter. Nevertheless, plaintiff persisted, and his submission of a written report about the incident resulted in disciplinary action being taken against the dispatcher. Plaintiff was not penalized in any way for bringing the matter to the attention of his superiors.
2) In 1972 or 1973, plaintiff observed two white officers arrest a black male who was driving with a white female, who he later learned was the black male's wife. Plaintiff testified that one of the officers beat the man. Plaintiff protested the man's treatment to his lieutenant. Plaintiff asked for and was granted permission to address his platoon. He informed the platoon that he would not tolerate such treatment of blacks. Plaintiff was summoned to the office of Lts. King and Walsh and was told that they were considering charging him with holding a "false roll call" and preventing the platoon from reporting to duty. Plaintiff reminded these officers that he had had permission to address his platoon, and no action was taken against plaintiff.
3) In 1971, plaintiff and his partner, a white officer, were called to a residence where a wife was being held hostage. He talked to the man holding the gun for an hour, which resulted in the arrest of the man and the release of the hostage. He received no commendation for his action. On the same day, a white officer received a commendation for arresting a man who had taken 18 record albums from a store.
Plaintiff's records indicate that the following disciplinary actions were taken against plaintiff during his service with the St. Louis Metropolitan Police Department:
1) Plaintiff received a written reprimand for an incident which occurred February 5, 1969.
2) Plaintiff received a written reprimand as the result of a complaint that he mistreated a woman's minor daughter when he took her into custody on August 6, 1969.
3) Plaintiff received a suspension without pay for ten days as the result of engaging in a fight on February 14, 1971.
4) Plaintiff lost five days pay for his failure to appear in Coroner's Court on September 30, 1971.
5) Plaintiff was cautioned and reinstructed for his failure to apply for a warrant on a subject whom he arrested on April 27, 1973.
6) Plaintiff received an oral reprimand for failing to answer a radio call on October 15, 1974.
7) Plaintiff received oral reprimands for being late to roll call on November 23, 1974 and February 1, 1975.
8) Plaintiff received an oral reprimand and had to pay for lost property because he lost his department cap and cap piece on February 10, 1975.
There were eight other occasions on which complaints against plaintiff were not sustained,[2] but where the complaints were not determined to be unfounded[3] either.
On November 29, 1975, plaintiff voluntarily resigned his commission as a police officer to seek employment elsewhere despite the urging of his supervisor, Major James Reddick,[4] that he remain with the police department.
In May, 1976, plaintiff applied for reinstatement as a police officer by writing a letter to Chief Camp. Plaintiff was notified *1012 by a letter signed by Chief Camp and dated September 17, 1976 that his request for reinstatement was being denied because of his disciplinary record while a member of the police department.
On December 19, 1977, plaintiff again applied for reinstatement as a police officer. This time he filed a formal application with the police department. Plaintiff was interviewed first by Dr. John Anderson and then by a review board composed of Major Brown, Major Reddick,[5] Sergeant Buchanan, and Sergeant Haley. Oliver Feldman conducted a routine background investigation, which included telephonic interviews with plaintiff's former supervisors to determine whether or not they recommended reinstatement. Mr. Feldman did not ask for written recommendations because he had learned from past experience that commanders were not willing to put in writing anything about the men who had served under them.
The Court finds credible Mr. Feldman's testimony that five former supervisors did not recommend reinstatement although two of them, Lieutenant Curry and Detective Sergeant Davis, testified at trial that they did not recall making such a recommendation and a third, Major Reddick, waffled back and forth on whether he had made such a recommendation or not.[6] A fourth, Lieutenant Alfin, testified that he refused to recommend reinstatement or non-reinstatement. Three of these former supervisors are black.
The normal procedure in handling a reinstatement application once the interviews and background investigation are complete is for Mr. Dames to make the initial recommendation. Then someone in the office of the Chief of Police either concurs or disagrees with Mr. Dames' recommendation. The Board of Police Commissioners make the final decision.
The Court credits Mr. Dames' testimony that he recommended against rehiring plaintiff on the basis of the background investigation and plaintiff's disciplinary record.
Lieutenant Colonel Jacobsmeyer, Assistant Chief of Police, signed Chief Camp's name as concurring in Mr. Dames' recommendation. The Board of Police Commissioners unanimously disapproved plaintiff's application with one member, Mayor Conway, not present. By letter dated March 30, 1978 and signed by Kenneth J. Dames, Personnel Director, plaintiff was informed that he had been disqualified for reinstatement.
On August 25, 1980, Chief Camp recommended to the city license collector that plaintiff's private investigator's license be renewed because plaintiff was not of questionable moral character and had held such a license previously without any questionable practices.
On April 19, 1978, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that he was discriminatorily denied reinstatement on the basis of his race. The charge of discrimination listed the St. Louis Metropolitan Police Department as Respondent.
The EEOC duly investigated plaintiff's charge of discrimination. On November 28, 1978, the EEOC issued its Determination informing plaintiff that there was no reasonable cause to believe that plaintiff's allegation of discrimination was true and that the Commission was dismissing the charge. The Determination further informed plaintiff that if he wished to pursue the matter, he could do so "by filing a private action in Federal District Court against the Respondent named above, within 90 days of receipt of Notice of Right to Sue which will be *1013 issued by the Department of Justice...." Plaintiff received the Notice of Right to Sue within a week of February 12, 1979.
Plaintiff filed his original complaint in this action on April 23, 1979, within 90 days of receipt of the Notice of Right to Sue but more than 90 days after receipt of the Determination.
During the years 1976-1978, 11 whites and two blacks were reinstated; three whites and one black other than plaintiff were denied reinstatement.[7] Other officers were reinstated or hired after March 1978 for the position for which plaintiff had applied.
The Court finds that plaintiff was technically qualified for the position for which he had applied in the sense that he passed the police aptitude test and his oral interview.[8]
The Court finds that plaintiff was not reinstated in 1976 because of his disciplinary record.
The Court finds that plaintiff was not reinstated in 1978 because of his disciplinary record and the results of his background investigation.
The Court finds nothing in the evidence to support plaintiff's contention that the failure to reinstate plaintiff was based upon any racial purpose or considerations.

CONCLUSIONS OF LAW
At the conclusion of plaintiff's case, a motion for a directed verdict against plaintiff and in favor of the City of St. Louis was granted on all counts. Likewise, a directed verdict was granted in favor of defendant Roche on all claims. A verdict was also directed in favor of the remaining defendants, the Board of Police Commissioners, its individual members, and Chief Camp on plaintiff's claim under § 1985. Remaining for consideration are plaintiff's claims against Chief Camp, the Board of Police Commissioners, and its individual members under Title VII and § 1983.
The present members of the Board of Police Commissioners have been substituted for those originally named pursuant to Fed. R.Civ.P. 25.
This Court does not have jurisdiction of plaintiff's Title VII claim pursuant to 42 U.S.C. § 2000e-5(f). Shea v. City of St. Paul, 601 F.2d 345 (8th Cir. 1979). The circumstances in Shea were identical to those in the instant case. A plaintiff who had worked for a local governmental entity was informed by the EEOC in a determination letter that her charge against the entity was being dismissed because no reasonable cause was found to credit her allegations and that she could file a private action, if she so desired, within 90 days of the receipt of notice of right to sue to be issued by the Justice Department. The Eighth Circuit held that plaintiff's action which was filed within 90 days of receipt of the notice of right to sue was not timely because the EEOC's determination letter triggered the running of the 90 day period since it informed plaintiff that the EEOC's administrative procedures had terminated and that plaintiff could not hope for any further assistance from the EEOC. Because the instant case is factually indistinguishable from Shea, plaintiff's claim under Title VII will be dismissed and judgment entered against plaintiff and for all defendants on plaintiff's claim under Title VII.
The Court has jurisdiction of plaintiff's claim under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1343.
Plaintiff has no constitutional right to public employment as a police officer. Fiedler v. City of Richmond, 468 F.Supp. 1119 (E.D.Va. 1979); Boulware v. Battaglia, 327 F.Supp. 368 (D.Del.1971). He does, however, have "a constitutional right to be free from unreasonably discriminatory practices with respect to such employment." Whitner v. Davis, 410 F.2d 24, 30 (9th Cir. 1969). The unreasonable discriminatory *1014 practices must be purposeful in order for plaintiff to recover under § 1983. Perham v. Ladd, 436 F.Supp. 1101, 1107. Such a discriminatory purpose may often be inferred from the "totality of the relevant facts." Washington v. Davis, 426 U.S. 229, 242, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976).
The unreasonable discriminatory practice alleged by plaintiff in this case is the denial of employment based upon racial considerations. To recover upon his § 1983 claim, plaintiff must show that he was purposefully discriminated against on the basis of race. This Court concludes that plaintiff has failed to show that defendants' decision not to reinstate him was a purposefully discriminatory act. There is absolutely no evidence which directly indicates that race was a consideration of anyone involved in the decision-making process. Nor is there any evidence from which the Court can infer a racially discriminatory purpose.
The motion for a directed verdict in favor of Chief Camp, which was taken with the case, will be granted, and judgment will be entered in favor of all defendants on plaintiff's claim under 42 U.S.C. § 1983.
NOTES
[1] When plaintiff first filed his complaint, the Board was composed of defendants Donald Whaley, Clarence T. Hunter, Suzanne Hart, John A. Schicker, Jr., James A. Roche, Jr., and the Mayor of St. Louis. At the time of the filing of the complaint and the trial, the mayor was James F. Conway. He has since been replaced as mayor by Vincent C. Schoemehl, Jr.
[2] A finding of "not sustained" means that there was not sufficient evidence to support the alleged complaint.
[3] A finding of "unfounded" means that the action complained of was found not to have occurred.
[4] Major Reddick was a captain at the time.
[5] Reddick was still a captain at the time.
[6] The Court does not find dispositive the fact that Major Reddick, as a member of the review board, endorsed plaintiff with enthusiasm at the time of plaintiff's oral interview. The background investigation came later. At some unknown time, Major Reddick heard rumors that plaintiff was involved in narcotics traffic. Major Reddick testified that these rumors could have caused him not to recommend reinstatement although he did not recall not recommending reinstatement.
[7] One other white whose reinstatement was pending was later denied reinstatement.
[8] Plaintiff had a score of 116 on the Police Aptitude Test (PAT). Passing was 100 or above. Plaintiff had a score of 91 on his oral interview. Passing was 70 or above.