**Mary C. MINOR, Plaintiff,**

v.

**NORTHVILLE PUBLIC SCHOOLS and Northville Board of Education, Defendants.**

**No. 81–40371.**

United States District Court,
E.D. Michigan, S.D.

March 28, 1985.

Jean L. King, Ann Arbor, Mich., for plaintiff.

Terrence J. Miglio, Detroit, Mich., for defendants.

## ORDER ACCEPTING MAGISTRATE'S REPORT AND RECOMMENDATION

NEWBLATT, District Judge.

The Court having reviewed the Magistrate's Report and Recommendation filed on March 5, 1985, as well as any objections filed thereto;

IT IS ORDERED that the Report and Recommendation is accepted and entered as the findings and conclusions of this Court.

## MAGISTRATE'S REPORT AND RECOMMENDATION

March 5, 1985

MARC L. GOLDMAN, United States Magistrate.

### I

### FACTS

From August, 1974 to the present time plaintiff, Mary C. Minor, has been employed as a full-time physical education teacher for the Northville Public Schools. For the school years beginning in 1973[1], 1974 and 1975, she accepted various coaching assignments of women's sports teams. Prior to beginning an assignment, all coaches, including plaintiff, signed supplementary salary notices which identified the sport to be coached and the rate of pay for these duties. The substance of this lawsuit is plaintiff's allegation that the rate of pay for female coaches was discriminatory and in violation of Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. § 2000(e), in that the rate of pay was less than that for male coaches handling equivalent coaching responsibilities. Plaintiff also claims that defendant's discriminatory treatment violated her rights as a third party beneficiary of a contract entered into between the defendant and the United States, pursuant to

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

Plaintiff's Title VII claim is complicated by its tortuous procedural history. On February 27, 1976, plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights against the Northville Public Schools. On April 20, 1976, the charge was referred to the Equal Employment Opportunity Commission. Plaintiff requested a right to sue letter from the EEOC on November 30, 1976, prior to the conclusion of the EEOC investigation, indicating that she was "prepared to file suit in Federal Court in Detroit". By requesting the right to sue notice, she terminated the investigation by the EEOC into her charges. 29 C.F.R. § 1601.25b(d). On February 4, 1977, the right to sue letter was issued by the EEOC. This letter specifically informed plaintiff that she could institute a lawsuit in federal district court within 90 days of its receipt.

Plaintiff's receipt of the letter and knowledge of her rights is evidenced by a memorandum of the EEOC dated April 21, 1977, indicating that counsel for plaintiff had informed the EEOC that an action had been filed in United States District Court and that administrative proceedings should stop (Exhibit I, Plaintiff's Motion for Summary Judgment). This statement was not true. Despite the request for and receipt of the right to sue letter, no action was filed in the United States District Court within the 90-day time period. Indeed, no action was taken until September 17, 1979 when plaintiff filed a class action against the defendant and others in the Circuit Court for the County of Ingham, Michigan. This action alleged violation of a number of State and Federal laws, including Title VII, the Equal Pay Act, 29 U.S.C. § 206(d) and the Michigan Elliott-Larsen Act, M.C.L.A. § 37.2101 *et seq.*

According to defendant, on June 30, 1981, after extensive litigation, the state court dismissed plaintiff's state claims as being untimely filed, and dismissed the Ti-

---

[1]. Plaintiff was a coach at Northville High School during the 1973 school year, although she was employed as a teacher in a different school district.

tle VII claim on the ground that it lacked jurisdiction. (P. 8, Defendant's Motion for Summary Judgment). The actual date that the order of dismissal was entered is unknown to this writer. On June 22, 1981, the Department of Justice issued plaintiff a second notice of right to sue based on the 1976 discrimination charge (App. 1, Complaint). It is apparent that plaintiff's request for the notice was submitted to the Justice Department in response to the defendant's motion to dismiss the Title VII claim, on jurisdictional grounds, in state court.

On September 17, 1981, eighty seven days after issuance of the second right to sue letter, plaintiff filed the instant action in this court against the Northville Public Schools and the Northville Board of Education. The Board of Education was later dismissed as a defendant by stipulation of the parties (Docket Entry # 32). On September 18, 1981, plaintiff moved to amend her *state* court complaint to add claims of retaliatory employment practices on the part of the Northville Public Schools. She claimed not to have been offered certain coaching positions in 1980 due to her filing of the civil rights complaint. The disposition of this motion is unknown to the undersigned.

On October 19, 1981, the defendant filed a third-party complaint in this court against the Northville Education Association, collective bargaining agent for the faculty of the Northville Public Schools. Subsequently, on January 25, 1982, plaintiff moved to amend the complaint currently pending in this court to add a claim of breach of a duty not to discriminate which she alleged was owed to her as a third-party beneficiary to assurances of non-discrimination made by defendant as required under § 902 of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, 34 C.F.R. § 106.-4. Leave to amend was granted on March 2, 1982. On April 6, 1982, the motion of the Northville Education Association to strike the third-party complaint was granted.

The defendant in this action filed a motion for dismissal and/or for summary judgment on October 19, 1982. On February 25, 1983, three days prior to argument on this motion, plaintiff moved to amend her federal court complaint for the second time to add allegations of retaliatory hiring practices against Northville Public Schools, the same allegation which formed the basis of her motion to amend the complaint filed in state court on September 18, 1981. These motions are currently before the court for decision. In short, defendant claims that this action is barred by the failure of plaintiff to file the action within 90 days of receipt of the right to sue letter issued by the EEOC on January 14, 1977. Defendant alleges, in the alternative, that this action is barred by the doctrine of laches. Defendant has further moved the court to dismiss all claims of discriminatory treatment which were filed in excess of 300 days prior to the filing of the EEOC claim. Defendant raises other legal challenges to plaintiff's claims arising under the contract/Title IX claim. As the undersigned is of the opinion that both the Title VII and contract/Title IX claims are barred by the respective statutes of limitations, only those issues will be discussed.

## II

### TITLE VII CLAIM

Title VII of the Civil Rights Act requires that any civil action arising under the statute be filed within 90 days after receipt of a right to sue "notice." 42 U.S.C. § 2000e-5(f)(1). Prior to 1982, this requirement was deemed to be jurisdictional, although subject to equitable tolling. *Fox v. Eaton Corp.*, 615 F.2d 716 (6th Cir.1980); *Leake v. University of Cincinnati*, 605 F.2d 255 (6th Cir.1979). However, in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 932, 102 S.Ct. 1417, 71 L.Ed.2d 643 (1982), the Supreme Court held that another Title VII time requirement, the 300-day time limit for filing charges with the EEOC or applicable state agency, was subject to waiver, estoppel or equitable tolling. Since that time, in accordance with reasoning in

*Zipes,* receipt of a "right to sue" notice and the 90-day filing requirement similarly have been considered conditions precedent to a Title VII claim, rather than jurisdictional prerequisites. *Pinkard v. Pullman-Standard,* 678 F.2d 1211, 1215 (5th Cir., Unit B, 1982); *Jackson v. Seaboard Coast Line Railroad Co.,* 678 F.2d 992 (11th Cir. 1982); *Rice v. New England College,* 676 F.2d 9 (1st Cir.1982); *see also, Ruiz v. Shelby County Sheriff's Dept.,* 725 F.2d 388 (6th Cir.1984). Subsequently, in *Baldwin County Welcome Center v. Brown,* —— U.S. ——, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984), the Supreme Court explicitly recognized that the time limitation on filing a Title VII action in federal court is not jurisdictional but a condition precedent which is subject to equitable tolling.

Defendant has moved to dismiss this action alleging that since plaintiff was issued a right to sue notice by the EEOC on February 4, 1977, her failure to file this action until September 17, 1981, far in excess of the 90-day limitation, mandates dismissal. Plaintiff, on the other hand, submits that under 42 U.S.C. § 2000e–5, only the Justice Department may issue a right to sue letter in an action involving a government employer. Accordingly, plaintiff contends that the right to sue letter issued by the EEOC in 1977 was a nullity and that this action under Title VII did not accrue until June 22, 1981, the date the Department of Justice issued its notice of right to sue. Since this action was filed 87 days after the date of the issuance of that letter, plaintiff contends that the action is timely.

The applicable statutory provision governing the respective roles of the EEOC and the Justice Department in processing complaints under Title VII, 42 U.S.C. § 2000e–5(f), provides in pertinent part:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, *the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge* (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. (Emphasis added).

Defendant suggests that the emphasized language must be interpreted in a manner which permits either the EEOC or the Attorney General to issue the right to sue notice in a case involving a government employer. While not a model of clarity, the statute, its legislative history, and the regulations adopted in response to the amendment of the statute, appear to limit the role of the EEOC in matters in which a government unit is the charged party.

Prior to 1972, Title VII afforded a remedy for employment discrimination only to employees in the private sector. *See,* 42 U.S.C. § 2000e–5(e) (1970). Pursuant to Section 401, P.L. 92–261, 86 Stat. 103, the statute was amended to provide a cause of action under the act for government employees. The change was made because Congress believed "that it is an injustice to provide employees in the private sector with an administrative forum in which to redress their grievances while at the same time denying a similar protection to [governmental] employees." 1972 U.S.Code Cong. & Adm.News pp. 2137, 2153–2154, House Report No. 92–238.

Charges of discrimination against a governmental unit, however, were considered a

special situation and congressional comment is replete with Congress' special concern that a federal administrative agency could possibly issue orders directly to a non-federal governmental unit. Congress sought to reduce "the possibility of friction that might be created by a Federal Executive agency issuing administrative orders to sovereign states and their subdivisions." 118 Cong.Rec. at 1170 (January 25, 1972). Congress responded to this concern by requiring that the Attorney General, rather than the EEOC, file civil actions and notify grievants of failure to conciliate when the respondent was a government, governmental agency, or political subdivision. *See*, 1972 U.S.Code Cong. & Adm.News, p. 2182. From 1972 to at least 1977, however, the role of the EEOC in those cases in which the plaintiff has requested a right to sue notice prior to the completion of the agency investigation and in those cases in which there has been a dismissal of the charges has been muddled by imprecise regulations and uncertain case law.

That it is, at the present time, the function of the Attorney General to issue the right to sue notice in most cases involving governmental respondents is confirmed by the EEOC regulation currently in effect. That regulation[2], 29 C.F.R. § 1601.28(d) (1984), provides:

> Notices of right-of-sue for charges against Governmental respondents. In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue the notice of right to sue when there has been a dismissal of a charge.... In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the right to sue....

The regulations, however, were not always so specific. New regulations were enacted as a result of the 1972 amendments to the Civil Rights Act. *See*, 37 F.R.

9214. Despite the provision in the statute relating to the responsibility of the Attorney General in actions against a government employer, the pertinent regulations enacted in response to the amendments, 29 C.F.R. § 1601.25 (1972) provided:

> In any instance in which the Commission is unable to obtain voluntary compliance, as provided by title VII, as amended, it shall so notify the respondent, the person filing a charge on behalf of the aggrieved person, the aggrieved person or persons, and any State or local agency to which the charge has been previously deferred pursuant to § 1601.12 or § 1601.10. Notification to the aggrieved person shall include:
>
> (a) A copy of the charge.
>
> (b) A copy of the Commission's determination of reasonable cause.
>
> (c) Advice concerning his right to proceed in court under section 706f(1) of Title VII.

A companion regulation, 29 C.F.R. § 1601.-25b(c) (1972), read as follows:

> At any time after the expiration of one hundred eighty days from the date of the filing of a charge or upon dismissal of the charge at any stage of the proceedings or upon the expiration of the time for filing objections to dismissal by the field director pursuant to § 1601.19, an aggrieved person may demand in writing that a notice pursuant to § 1601.25 and *the Commission* shall promptly issue such a notice and provide copies thereof and the copies of the charge to all parties. 29 C.F.R. § 1601.25b(c), (1972) 37 F.R. 9219. (Emphasis added)

No reference was made in the 1972 regulation to a separate procedure for actions filed against governmental employers nor to any responsibility of the Attorney General in such cases. The clear import of the regulation vested the power to issue a notice of right to sue with the Commission notwithstanding the public or private sector status of the employer.

---

**2.** It is significant to note that this regulation appears to conflict with the statute in that under the regulation, the EEOC shall issue the right to sue notice when there has been a dismissal of the charge. *See, Lugo v. City of Charlotte*, 577 F.Supp. 988 (W.D.N.C.1984).

In 1974, however, 29 C.F.R. § 1601.25 was amended in order to clarify "... an apparent misunderstanding, on the part of a number of respondents, with respect to the authority of the District Directors to issue Notices of Right to Sue..." 39 F.R. 10123. Effective March 18, 1974, subsection (b) was added to the regulation which provided:

> The Commission hereby delegates to its District Directors, Deputy District Directors, and the Director of Compliance, the authority to issue Notices of Right-To-Sue on behalf of the Commission in all cases except those in which a government, governmental agency or political subdivision is named in the charge; pursuant to the procedures set forth in paragraph (a)(b) and (c) of this section.

The above-quoted regulations remained in effect in substantially the same form until October 14, 1977, approximately ten months after plaintiff received the right to sue letter from the EEOC. The pertinent regulation in effect on January 17, 1977, the date the EEOC issued the Right to Sue notice in this case, 29 C.F.R. § 1601.25b(c) (1977) read as follows:

> At any time after the expiration of one hundred and eighty (180) days from the date of the filing of a charge at any stage of the proceedings, an aggrieved person may demand in writing that a notice issue pursuant to § 1601.25 and *the commission* shall promptly issue a notice, and provide copies thereof and copies of the charge to all parties. (Emphasis added).

Again, the regulations do not specifically delegate the authority to issue such letters to the Attorney General in cases involving a government employer when the aggrieved individual demands that a notice issue, as opposed to those cases in which conciliation has failed.

On August 19, 1977, the Commission promulgated new proposed regulations for public comment. 42 F.R. 42022. The proposed rules indicated that new Section 1601.28 contained the provisions for issuing notices of right to sue previously contained in § 1601.25. The commentary further indicates that new Section 1601.28(d) provided that requests for notices of right to sue in cases involving respondent governments or governmental agencies would be referred to the Attorney General. There is no indication in the comments that § 1601.28 is a recodification of an existent regulation. 42 F.R. 42025. Indeed, it is treated as a new section. On October 14, 1977, the new rules were published in final form. 42 F.R. 55388. Section 1601.28(d) of those rules provided:

> Notices of right to sue for charges against government respondents. Notice of right to sue in cases where the respondent is a government, governmental agency, or a political subdivision thereof, shall be issued by the Attorney General who has the authority to issue such notices. 42 F.R. 55393–55394.

This was the first regulatory provision which clearly articulated the policy that the Attorney General, rather than the Commission, possessed the exclusive authority to issue right to sue notices where the employer was a governmental entity and the grievant demanded the notice prior to completion of agency proceedings. The regulations and their amendments between 1972 and 1977 therefore do little to clarify the respective responsibilities of the EEOC and the Attorney General in charges involving a governmental respondent. From 1972 to 1974, it appears that the EEOC retained the responsibility of issuing right to sue notices regardless of the status of the charged party or the manner in which the investigation was terminated. The 1974 amendment to 29 C.F.R. § 1601.25 apparently withdrew the authority of District Directors and his/her subordinates to issue the notices when the respondent was a government, governmental agency, or political subdivision. However, Section 1601.25 can be read to apply only to those situations in which conciliation had failed. On the other hand, the reference in § 1601.25b(c) that notices shall be issued pursuant to § 1601.25 can be said to preclude the commission from issuing right to sue no-

tices in all cases which involved a governmental respondent. Section 1601.28b(c) can therefore be read to have governed those cases in which an aggrieved party had demanded a "right to sue" notice prior to the termination of administrative proceedings, as opposed to those cases in which conciliation has failed, and authorized that the Commission issue the notice, regardless of the status of the respondent. At best, it can only be said that the regulations in effect in 1977 did not clearly spell out the role of the Attorney General in issuing right to sue notices despite the apparent intention of Congress and the EEOC to vest this authority with the Attorney General.

This conclusion is borne out by the only two cases cited by the parties which discuss the respective authority of the EEOC and the Justice Department to issue notices of right to sue prior to the enactment of the 1977 amendment to the regulations. In *Ramos v. Port Authority*, 20 FEP 174 (S.D.N.Y.1976), the EEOC had dismissed a charge of discrimination and informed plaintiff, in a letter dated August 11, 1975, that she could file suit within ninety days of receiving a right to sue letter from the Justice Department. Plaintiff contacted the Justice Department and received a right to sue letter on October 20, 1975. Suit was filed on January 19, 1976.

The defendant moved to dismiss claiming that the ninety-day period in which to sue commenced upon receipt of the letter from the EEOC. The Court, relying on *DeMatteis v. Eastman Kodak*, 511 F.2d 306 (2d Cir.1975) *mod. on rehearing*, 520 F.2d 409 (2d Cir.1975), held that in cases in which the EEOC issued a notice of *dismissal* of the charge, the limitation period commenced running within ninety days of that notification. The court found no authority requiring that the notice of right to be sue be issued by the Justice Department. The Court accordingly dismissed the complaint. On rehearing, the Court reversed its decision, finding that the EEOC had mislead

the plaintiff, thereby excusing her failure to timely file the complaint.

In *Brisbane v. Port Authority of New York and New Jersey*, 414 F.Supp. 604 (S.D.N.Y.1976), the Court was faced with an identical set of facts. Again, the claimant followed the EEOC's instructions to file suit within 90 days of receipt of a notice from the Justice Department. Defendant moved to dismiss alleging that the time period for filing the action commenced from the notice of dismissal, not from the date of the receipt of the right to sue letter from the Justice Department. The Court found that the interpretation of the statute by the EEOC and Justice Department requiring that the latter issue right to sue letters in cases involving governmental units was entitled to great deference. However, the Court in *Brisbane* did not find it necessary to decide whether it was the responsibility of the EEOC or Justice Department to issue the notice. In light of the EEOC's instruction, the Court found that the plaintiff had not received such notice as would commence the ninety-day period in which to bring suit. *Id.*, 414 F.Supp. at 608. It is important to note that in both *Brisbane* and *Ramos*, the plaintiff had relied upon the EEOC's statement that the Justice Department would issue the required notice and the respective courts found that reliance on this directive excused any delay in the filing of the action.

It is beyond dispute that the majority of cases interpreting the statute and regulations since the 1977 amendment to the regulations have found that in cases in which the respondent is a government entity or an agency thereof, the authority to issue right to sue notices is delegated to the Justice Department. *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518 (11th Cir.1983); *Lugo v. City of Charlotte*, 577 F.Supp. 988, 989–990 (W.D.N.C.1984); *English v. Ware County Department of Family & Children*, 546 F.Supp. 689, 691–92 (S.D.Ga.1982); *Osiecki v. Housing & Redevelopment Authority*, 481 F.Supp. 1229 (D.Minn.1979); *Stapper v. Texas Dept. of Human Resources*, 470 F.Supp.

242 (W.D.Tex.1979).[3] However, it is significant to note that in none of these cases was it found that the failure of the plaintiff to obtain such notice from the Justice Department was a jurisdictional bar to suit. In each of these cases, the plaintiffs' charges had been dismissed by the EEOC and the plaintiffs had not obtained right to sue notices from the Justice Department before filing suit, either because the EEOC had not informed them of the requirement or because the Justice Department had failed to respond to their requests for the letters. In each case, the Court denied motions to dismiss on equitable grounds.

The case at bar presents a unique set of facts, however, incomparable to those presented in any reported decision. In this case, the plaintiff terminated the EEOC investigation rather than allowing it to reach a final decision. Moreover, plaintiff requested a right to sue notice and, in fact, received one from the EEOC. Nonetheless, despite informing the EEOC that she intended to file a federal suit, plaintiff did nothing for two years and subsequently filed suit in state court. Only when it was apparent that the state court action was about to fail, did plaintiff request a right to sue letter from the Justice Department, almost four years after initially requesting a right to sue letter from the EEOC. Thus, while it is clear that currently it is the Justice Department that is authorized to issue right to sue letters in cases involving government employers, and that in all likelihood it has been the intent of Congress and the EEOC, since 1974, that the Justice Department issue such letters, that finding is not dispositive of this case. In order to determine whether plaintiff was untimely in filing this action, we must examine the operative effect, if any, of the EEOC notice issued in September, 1977. In other words, as was stated in *Brisbane,*

*supra,* the crucial issue is whether plaintiff received such notice in 1977 as would trigger the 90-day period in which to commence suit.

The facts of this case are not unlike those presented in *Brown v. Mead Corp.,* 646 F.2d 1163 (6th Cir.1981). In *Brown,* the plaintiff filed a discrimination complaint against the defendant in 1970. In December, 1974, she was issued a right to sue notice which included an EEOC determination of no probable cause to believe that she was discharged from her job because of her sex. She took no court action within the statutory time limit. In January, 1978, plaintiff received a second notice, this time informing her that the Commission found reasonable cause to believe she had been discriminated against and again notifying her of her right to file suit within ninety days. Accompanying this notice was a letter from the EEOC advising plaintiff that the determination and notice issued in December, 1974 was the product of an administrative error and outside the authority of the EEOC to issue.

Plaintiff filed an action within ninety days of receipt of the second letter. This action was dismissed by the district court which found that the first notice had created jurisdiction subjecting plaintiff to the ninety day statutory period for filing. On appeal, plaintiff claimed that the first notice was a nullity since the EEOC did not have the authority to issue the determination and right to sue letter.

Despite finding that the Commission did not have authority to issue the December, 1974 notice, the Court of Appeals, in an opinion by then District Judge Patricia Boyle, affirmed the dismissal of the action. While recognizing that the court had, on occasion, found that the time limitations of Title VII were subject to equitable tolling[4],

---

**3.** Two courts have held that receipt of a right to sue notice from the EEOC triggered the 90-day filing requirement for filing suit in cases in which the respondent was a government entity. *Shea v. City of St. Paul,* 601 F.2d 345 (8th Cir.1979); *Monroe v. St. Louis Metropolitan Police Authority,* 524 F.Supp. 1009 (E.D.Mo.1981). In *Shea,* the Court noted that the parties did not

claim that the defendant's governmental status was significant to the disposition of the case. 601 F.2d at 350, n. 6. The *Monroe* court did not discuss the issue.

**4.** See, e.g., *Leake v. University of Cincinnati, supra; Fox v. Eaton, supra; Chappell v. Emco*

the Court noted that the concept was not an "escape valve through which jurisdictional requirements will evaporate since 'the tolling of the statutory periods on equitable grounds is usually very much restricted'. *Geromette v. General Motors Corp.,* 609 F.2d 1200, 1203 (6th Cir.1979), *cert. denied,* 446 U.S. 985, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980)". *Id.* 646 F.2d at 1165. The Court then proceeded to examine whether the issuance of the 1974 notice was sufficient to support an action and, if so, whether grounds existed for applying the doctrine of equitable tolling.

With respect to the first question, the Court found that the first notice was not a "nullity" as characterized by plaintiff, but was facially valid despite the fact that it was issued without authority by the EEOC. While the Court predicated its finding of facial validity in part on the need to preclude court investigation of every EEOC notice to determine administrative consistency, the Court also recognized that if the suit were not brought under the first notice, a plaintiff could wait an indefinite time before obtaining a right to sue notice and then commence an action against a surprised employer. *Id.* at 1166.

In reaching its decision, the Court was careful to distinguish *Hiduchenko v. Minneapolis Medical & Diagnostic Center, Ltd.,* 475 F.Supp. 1175, 1179 (D.Minn.1979). In that case, the plaintiff had requested and received a right to sue letter eleven days after filing a complaint with the EEOC. The district court dismissed her suit based on that notice because the requirement of deferral to the EEOC and the state agency had not been met. *Hiduchenko v. Minneapolis Medical & Diagnostic Center, Ltd.,* 467 F.Supp. 103 (D.Minn. 1979). Plaintiff's subsequent suit, filed after proper resort to the administrative process, was met with a motion to dismiss by the defendant who claimed that the action was untimely in that the first notice was valid. The Court rejected this motion, finding that the first letter was a nullity and that dismissal would undermine the inter-

est in seeing the EEOC resolve these types of disputes.

The *Brown* court distinguished *Hiduchenko* by concluding that in the case before it, the first notice was not a nullity in that it was facially valid. Any defect could only have been discovered by investigating the underlying EEOC action. The Court further answered plaintiff's contention that the first suit would have been subject to dismissal by stating:

> There is no apparent reason why a court could not stay proceedings commenced in reliance on a deficient notice until the plaintiff had a chance to cure the defect. *See, Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 765, n. 13, 99 S.Ct. 2066, 2076, n. 13, 60 L.Ed.2d 609 (1979). *Id.* at 1167, n. 8.

Finding that plaintiff had failed to act on the first notice, the absence of any act by her employer or the EEOC deterring such action, and that plaintiff had not timely pursued an alternate remedy, the court determined that there was no basis for equitable tolling of the statute and affirmed dismissal of the case.

As noted, I suggest that the focus in this case should similarly not be on whether the right to sue letter issued by the EEOC was in conformity with the statute and regulations, for it most likely was not. The analysis must focus on first, whether the letter received from the EEOC gave sufficient notice to plaintiff of her responsibilities under the act, and second, whether the court would have had jurisdiction to entertain this action based upon the notice of right to sue issued by the EEOC in 1977. If so, the right to sue letter issued in 1976 cannot be considered a nullity.

■ Both of these questions must be answered in the affirmative. The notice to plaintiff, while perhaps not in conformity with the intent of Congress or with the interpretation of the concerned agencies, gave plaintiff clear notice of her responsibilities. *See, Brisbane, supra.* Similarly, it must be noted that plaintiff was not

*Machine Works,* 601 F.2d 1295 (5th Cir.1979);

*Harris v. Walgreen,* 456 F.2d 588 (6th Cir.1972).

misled into not timely filing suit as were the plaintiffs in *Ramos* and *Brisbane.* Plaintiff was explicit in demanding her notice with the expressed intent to file suit, a demand which was complied with by the Commission. Moreover, plaintiff subsequently informed the Commission by letter of her intent to file suit in accordance with the stated requirements of the notice which was sent. Thus, by her own actions in demanding the notice of right to sue, plaintiff terminated all administrative proceedings. 29 C.F.R. § 1601(d). In effect, plaintiff set all the gears in motion for the filing of a court action and evinced the intent to do so. Defendants were led to believe that administrative proceedings had ceased and that any further action would commence within 90 days or not at all. The failure to timely file this action rests solely with plaintiff and must be viewed as a deliberate decision to abandon a federal court action or to pursue alternate remedies.

■ I further suggest that the district court would have had jurisdiction in this case based upon the 1977 notice, despite any alleged infirmity of the notice. As was noted in *Brown, supra,* if the notice had been challenged as deficient, there exists no reason why the court could not have stayed the proceeding until plaintiff could have cured the defect. Moreover, had plaintiff filed suit based upon the EEOC notice, the court could have waived the requirement of a notice from the Justice Department. *See,* e.g., *English v. Ware Cty. Dept. of Family & Children, supra,* 546 F.Supp. at 646. Just as the failure to timely file a charge with the Commission or timely file a complaint with the Court is subject to equitable tolling, the failure to receive a notice of right to sue from the proper agency would not deprive the court of jurisdiction. Waiver or modification of the requirement would have been available to plaintiff had she elected to file suit in 1977 as she explicitly stated that she intended to do.

■ A statute of limitations promotes justice by preventing surprises through the revival of claims that have been allowed to slumber. *Burnett v. New York Central R.R.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). In the context of Title VII, it is designed to protect employers from stale claims. In this case, plaintiff withdrew her claim from the EEOC and demanded a right to sue notice. Regardless of whether the issuance of the notice by the EEOC was a result of an error or was a proper application of the existing regulation, plaintiff had the opportunity to file suit in Federal District Court. This she neglected to do for over four years. Her failure to do so was not the result of misleading information from either her employer or the EEOC. Nor did plaintiff timely pursue an alternate judicial remedy. Based upon these findings, I conclude that plaintiff's action was untimely filed and respectfully recommend that the claims under Title VII be dismissed [5].

### III

### THIRD PARTY BENEFICIARY CLAIMS

Count Two of the amended complaint, filed on January 25, 1982, alleges that on February 18, 1976, the defendant school district adopted a statement of compliance with Title IX of the Education Amendments of 1972 in order to qualify for receipt of federal funds under that act. Plaintiff characterizes this statement of compliance as a contract between the defendant and the United States government to which she is a third party beneficiary, and accordingly characterizes this claim, not in a Title IX context, but as a pendent state contract claim under which she is entitled to damages. Plaintiff alleges that the defendant breached its contract with the United States by paying her less for coaching duties in the spring of 1976 than that received by male coaches (Par. 79–84, Docket Entry 13a).

---

**5.** The above recommendation makes it unnecessary to consider whether the doctrine of *Laches* would be a defense to a Title VII claim in this

Circuit. *See, Ruiz v. Shelby County Sheriff's Department,* 725 F.2d 388 (6th Cir.1984).

Defendant has moved for summary judgment with respect to Count II, alleging that it fails to state a claim upon which relief can be granted, in that there was no consideration for the alleged contract. Defendant further alleges that Count II must be characterized as an action under Title IX, and summary judgment is warranted since the claim is barred by the statute of limitations. Defendant also claims that summary judgment must be granted under the program specific limitations of Title IX since the athletic program of the Northville Public Schools received no federal funds. Finally, defendant asserts that monetary damages are not available under Title IX.[6]

The crucial issue in resolving the dispute regarding Count II is in properly characterizing plaintiff's claim. Plaintiff asserts that the right she is attempting to invoke is a contractual right, emanating from the statement of compliance entered into by the school board in 1976. Defendant, on the other hand, contends that the right asserted is the statutory right provided for in Section 901 of the Education Amendment of 1972 (20 U.S.C. § 1681) which prohibits discrimination or denial of benefits on the basis of sex under any educational program or activity receiving federal financial assistance. Obviously, if plaintiff's position is accepted, she is not subject to the more restrictive statute of limitations which is applicable in civil rights cases nor to the program specific limitations of Title IX. *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). Thus, a determination of whether an action lies in contract, based upon this certificate of assurance, is in order.

As stated by plaintiff, her claim, as alleged in Count II, is a state contract claim. Her rights thereunder arise as a third party beneficiary to a "contract" between the Northville Public Schools and the United States by which in exchange for federal assistance, the defendant promised not to discriminate on the basis of sex in any program or activity receiving such federal assistance. I suggest, however, that the right which plaintiff is seeking to enforce is not a contract right, but a right created by federal law with specific goals and objectives which arises totally under Title IX.

There is absolutely no question that a private cause of action exists under Title IX of the Education Amendment of 1972, *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) or that employment discrimination is within the prohibitions of Title IX. *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). However, in defining the scope of Title IX, the Court has recognized that there exists both a public and private remedy for enforcement of the rights created by the statute. As was noted in *Cannon v. University of Chicago, supra,* Title IX has two related, yet somewhat different, objectives. First, Congress sought to prevent the use of federal funds to support discriminatory practices; second, it wanted to provide individual citizens effective protection against those practices. *Id.,* 441 U.S. at 704, 99 S.Ct. 1946. The first objective is satisfied through the enforcement procedure of § 902 of the act, 20 U.S.C. § 1682, which provides for agency oversight over the use of federal funds in education and authorizes the issuance of rules, regulations, and orders consistent with achievement of the objectives of § 901. The second objective, that of protecting an individual from discrimination, was satisfied by the finding that a private cause of action exists to enforce those rights articulated in § 901. *See, NAACP v. Medical Center*, 599 F.2d 1247 (5th Cir.1979); *Client's Counsel v. Pierce*, 532 F.Supp. 563, 590–593 (W.D.Ark. 1982).

In accordance with the rule making provisions of § 902, in 1975, the Department

---

**6.** As this writer is of the opinion that Count Two of the complaint is barred by the statute of limitations, there is no need to discuss the issues of the program specific limitations of the act; *See Grove City College v. Bell,* —— U.S. ——, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), or whether damages are available under the act. *See, Cannon v. University of Health Sciences,* 710 F.2d 351, 356 (7th Cir.1983).

of Health, Education and Welfare issued regulations governing the operation of federally funded educational programs. *North Haven Bd. of Ed. v. Bell, supra,* 456 U.S. at 515, 102 S.Ct. at 1915. Among those regulations was the regulation requiring that each application for federal funds, as a condition of its approval, be accompanied by an assurance that each educational program to which the regulation applies will be operated in compliance with the regulations. 34 C.F.R. § 106.4 (1980). Enforcement of these regulations, which included regulations prohibiting employment discrimination on the basis of sex, was vested, pursuant to § 902 of the act, with the agency extending federal financial assistance. The purpose of these regulations has been discussed, in passing, by numerous courts.

In *Hillsdale College v. Department of HEW,* 696 F.2d 418 (6th Cir.1982), *vacated and remanded,* — U.S. ——, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984), the Court stated the Department's view of the function of the Assurance of Compliance:

> The Assurance of Compliance, HEW asserts, is critical to its effective enforcement of Title IX insofar as it provides a means of monitoring the threshold compliance with the statute by the large number of universities, colleges, schools, and other institutions covered by Title IX. A similar regulatory scheme is employed by the various agencies in charge of enforcing Title VI. *See,* e.g., 38 C.F.R. § 18.4 (1981) (assurance of compliance required as a condition of receipt of federal financial assistance from the Veterans Administration). 696 F.2d at 421, n. 10.

The Court later referred to the Assurance of Compliance solely as a condition precedent to the continuation of federal funds, with no intention that it created substantive rights on behalf of individual grievants, 696 F.2d at 424.

In *Grove City College v. Bell,* 687 F.2d 684 (3rd Cir.1982), *aff'd as modified,* — U.S. ——, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), the Court characterized the assur-ance of compliance required by the regulations as a "means of securing adherence to Title IX". *Id.* at 688. The Court of Appeals in *Grove City* described the certificate of assurance as follows:

> The form prescribed did little more than identify the type of institution applying for federal funds. It required minimal information respecting grievance procedures in the event of complaints, and a statement of self evaluation concerning the practices of the institution. Primarily, it committed the recipient of the funds to comply with Title IX and the regulations. As such it constituted a threshold device facilitating the enforcement of Title IX's objective.

> Thus the assurance regulations, when read in conjunction with section 902, authorizes the department to determinate federal financial assistance upon a recipient's failure to execute an assurance. We are satisfied that Title IX authorizes the promulgation of the assurance regulation and that the department can therefore properly condition its grant or denial of funds upon adequate representations that the recipients will not discriminate. 687 F.2d at 703.

In reviewing the above decision, the Supreme Court summarized the role and effect of the Certificate of Compliance in the Title IX statutory and regulatory scheme as a condition precedent to the receipt of federal funds. *Grove City College v. Bell,* — U.S. ——, ——, n. 20, 104 S.Ct. 1211, 1220, n. 20, 79 L.Ed.2d 516 (1984). All that is required by the regulation is an assurance by the institution that any program or activity receiving federal funds will conform to the requirements of §§ 901 and 902. In describing the effect of a failure to execute the certificate, the Court stated:

> A refusal to execute a proper program specific Assurance of Compliance warrants termination of federal assistance to the student financial aid program. The College's contention that termination must be preceded by a finding of actual discrimination finds no support in the language of § 902, which plainly autho-

rizes that sanction to effect "[c]ompliance with any requirement adopted pursuant to this section." Regulations, authorizing termination of assistance for refusal to execute an Assurance of Compliance with Title VI had been promulgated, 45 CFR § 80.4 (1964), and upheld, *Gardner v. Alabama,* 385 F.2d 804 (CA5 1967), *cert. denied,* 389 U.S. 1046, 88 S.Ct. 773, 19 L.Ed.2d 839 (1968), long before Title IX was enacted, and Congress no doubt anticipated that similar regulations would be developed to implement Title IX. 118 Cong.Rec. 5807 (1972) (Sen. Bayh). We conclude, therefore, that the Department may properly condition federal financial assistance on the recipient's assurance with it will conduct the aided program or activity in accordance with Title IX and the applicable regulations. [—— U.S. at ——-——] 104 Sup.Ct. at 1222–1223.

■■■ *Cannon, North Haven,* and *Grove City College* clearly indicate that the substantive individual right to be free from sex discrimination within the context of educational programs that receive federal funds arises under § 901 of the act. Similarly, the remedy for that wrong in terms of a private cause of action to enforce the provisions of that act, arise under § 901. *Cannon v. University of Chicago, supra.* Despite plaintiff's attempt to characterize the right violated as a contractural one, predicated upon the certificate of assurance, it is beyond peradventure that the execution of the certificate of assurance creates no substantive rights in plaintiff's behalf. The certificate is merely one step of a regulatory process designed to facilitate the enforcement of Title IX. Any rights which accrue to plaintiff do so under the authority of § 901 and defendants motions must be construed within the framework of that provision.

Plaintiff's reliance on *Bossier Parish School Board v. Lemon,* 370 F.2d 847 (5th Cir.1967) as authority for the proposition that the certificate of compliance gives rise to contractual rights which she is entitled to enforce is misplaced. In *Bossier,* black school children of parents stationed on a federal military base challenged the school district's segregation of schools. The defendant Board of Education claimed that the plaintiffs had no standing to bring the action since they "were not within its jurisdiction" within the meaning of the Fourteenth Amendment, because they lived on a military reservation. The district court, in an opinion adopted by the Court of Appeals, found that the Board, by accepting federal funds and giving assurances that the military children would be admitted to the schools on the same terms as other students in the district, had created a contract by which the students, as third party beneficiaries, had standing to challenge the segregation in the schools. The court found, however, that the "assurances" gave rise only to the right to attend the schools and specifically stated that it could not force desegregation by specifically enforcing the assurances. *Id.,* 370 F.2d at 850–851. In other words, the Court found that the right to be enforced was created, not by contractual obligations under the assurance of compliance, but by § 601 of Title VI of the Civil Rights Act of 1964. Indeed, the Court specifically noted that contract rights were not involved in that case. *Id.,* 370 F.2d at 851.

Plaintiff has not submitted any legal authority which has recognized, either expressly or implicitly, a contractual cause of action predicated upon the completion and submittal of a certificate of assurance not to discriminate under Title VI or Title IX. The purpose in requiring such a certificate, that of monitoring and facilitating enforcement of the Act's objectives, is administrative and regulatory in scope and cannot be said to create third party beneficiary interests in contract when both Acts contain specific provisions which provide private causes of action to remedy violations of the Acts. Count Two of this complaint, properly construed, is simply a cause of action under Title IX rather than a third party beneficiary breach of contract claim.

■■■ Title IX of the Educational Amendments of 1972 does not contain a statute of

limitations. To ascertain the proper statute of limitations, the Court must look to the most analogous state statute. *Runyon v. McCrany,* 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976); *Sutton v. Bloom,* 710 F.2d 1188, 1190 (6th Cir. 1983); *Dunn v. Tennessee,* 697 F.2d 121 (6th Cir.1982).

▬▬ Whether plaintiff's claim is characterized as one for damages or injunctive relief, the most analogous Michigan state statute would obviously be the Elliott-Larsen Civil Rights Act. See, M.C.L.A. §§ 37.2202, 37.2801. The Courts have consistently held that actions under the Elliott-Larsen Act are governed by the statute of limitations provision contained in M.C.L.A. § 600.5805, which provides a limitation period of three years for all actions to recover damages for injuries to persons and property. *Vandenhout v. Manchester Plastics, Inc.,* 538 F.Supp. 401 (E.D.Mich.1982); *Richards v. IBM Corp.,* 504 F.Supp. 1369 (E.D.Mich.1981); *An Tai Chai v. Michigan Technological University,* 493 F.Supp. 1137 (W.D.Mich.1980); *Gilbert v. Grand Trunk Western R.R.,* 95 Mich.App. 308, 290 N.W.2d 426 (1980).

Accordingly, plaintiff's claim of sexual discrimination in terms of disparate treatment under Title IX in the spring of 1976 would have been required to have been filed no later than the end of the school year in the spring-summer of 1979. This action, however, was not filed until September 15, 1981, and the complaint was not amended to include this allegation until January 25, 1982. These dates are far beyond the three-year period in which the action could be filed. Accordingly, it is respectfully recommended that Count Two of the complaint be dismissed.

## IV

### PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff seeks leave to amend her complaint by adding three new counts. Count I alleges retaliatory refusal to hire her in 1980 and 1981 as a coach for varsity fast-pitch softball and paying her less than her seniority requires for coaching juror varsity women's fast-pitch softball in 1981, all in violation of Title VII. Count II alleges that defendant's conduct as articulated above violated the Michigan Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.2101 *et seq.* Count III alleges that defendant's conduct violated plaintiff's rights as a third party beneficiary to a "contract" under which defendant received federal funds. Defendant submits that the motion to amend has been unduly delayed, that it would be unduly prejudiced by allowing amendment and that amendment would be futile, and therefore, leave to amend should be denied. Plaintiff contends that amendment is not futile, that defendant has not been prejudiced, and that where there has been no prejudice, delay, in and of itself, is not grounds to deny leave to amend.

The facts that give rise to the proposed amendment to the complaint arose in 1980 and 1981 while plaintiff's state court action was pending. Plaintiff moved in that court for leave to amend her complaint. The state court apparently denied that motion. When filing the action in this court (one day before moving, for the second time, in state court for leave to amend), plaintiff did not include the allegations supporting the proposed second amended federal complaint. Having failed to include the allegations in her original complaint or in her first amended complaint, plaintiff now seeks leave to amend under Rule 15, Federal Rules of Civil Procedure.

▬▬ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend complaints shall be freely granted "when justice so requires". *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 970 (6th Cir.1973); *Tefft v. Seward,* 689 F.2d 637 (6th Cir.1982); *Howard v. Kerr Glass Mfg.,* 699 F.2d 330, 333 (6th Cir. 1983). However, such leave is inappropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, [or] undue prejudice to the opposing party by virtue of the allowance of amendment". *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Troxel,* 489 F.2d at 970. The determination of whether the motion to amend is to be granted is left to the sound discretion of the trial court. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Zenith Radio Corp. v. Hazeltine,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Estes v. Kentucky Utilities Co.,* 636 F.2d 1131, 1133 (6th Cir.1980). Examination of the *Foman* factors is to be made in light of Rule 1's directive that the rules "are to be construed to secure the just, speedy, and inexpensive determination of every action." Rule 1, Fed.R.Civ.P.; *Foman,* 371 U.S. at 182, 83 S.Ct. at 230.

■ Defendant alleges that all the *Foman* factors are present in this case. First, defendant contends that there has been undue delay in filing this motion. In balancing the equities in this matter, it must initially be noted that delay alone is an insufficient reason to deny a motion to amend. The critical factors to be examined are notice and substantial prejudice. *Estes, supra,* 636 F.2d at 1134; *Hageman v. Signal L.P. Gas,* 486 F.2d 479, 484 (6th Cir.1973).

However, when taking the measure of prejudice in a case, it is necessary to weigh the plaintiff's reasons for any delay in raising the issue proposed for amendment against the prejudice likely to be suffered by the defendant. *Head v. Timken Roller Bearing Co.,* 486 F.2d 870, 874 (6th Cir. 1973). "[T]he longer the period of unexplained delay the less will be required of the nonmoving party to show prejudice." *Advocat v. Nexus Industries, Inc.,* 497 F.Supp. 328, 331 (D.C.Del.1980).

Of great concern to this writer is plaintiff's failure to include these allegations in either the original or first amendment complaint. The facts of the proposed Second Amended Complaint were well known to plaintiff at the time plaintiff filed her original complaint. Indeed, these very allegations had been submitted to a state court for consideration at the time of filing this action in federal court. It is also significant that plaintiff offers no reason for her failure to include the present allegations in her original complaint or in her first amended complaint. She claims only that amendment would not be futile and defendant has suffered no prejudice. Thus, while not determinative, I suggest that there has been undue delay in bringing the issues presented by the second amended complaint before the Court for which good cause has not been shown. The facts underlying each of these "new" claims were known to plaintiff prior to the filing of the complaint.

■ Defendant's claim that plaintiff has acted in bad-faith is not supported by this record. Inquiry into a plaintiff's good faith, when contested by defendant, is interrelated with inquiry into the excuse for delay. Wright & Miller, Federal Practice and Procedure: Civil § 1487 p. 435 (1971). However, filing a motion for leave to amend after prompting by opposing counsel's motion for dismissal is not bad faith as intimated by the defendant here. *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179 (5th Cir.1980).

The most significant matter to be considered is the potential prejudice to the defendant should the motion to amend be granted. The prejudice defendants claim results from the additional delay and cost that will accrue due to the necessary extension of the discovery schedule. Defendant claims that permitting the amendment of the complaint would alter and expand the issues to be litigated and require extensive discovery. Discovery is scheduled to be completed 35 days following disposition of these motions. Plaintiff on the other hand claims that 35 days will afford ample opportunity for discovery on the issues involved in the second amended complaint. It must be noted, however, that almost any amendment will result in some degree of additional discovery being required. All factors must therefore be closely scrutinized in the exercise of discretion.

The Court of Appeals for this Circuit has liberally interpreted Rule 15(a). In *Tefft v.*

*Seward, supra,* the Court found that the District Court erred in not allowing an amendment to the complaint where the new cause of action was based upon the same facts as the original cause, despite the fact that amendment was raised only in a response to a motion for summary judgment. Similarly, in *Howard v. Kerr Glass Mfg., supra,* the Court held that it was error for the District Court to deny amendment after commencement of trial where the issue had been raised at the pretrial conference and thus, there was no surprise to the opposing party.

However, both *Tefft* and *Howard* differ from the present case in one important aspect. In each case, the proposed amendment sought to amend only a theory of recovery. The facts underlying the claims had been fully explored prior to trial. Thus, no further discovery would have been required and there was no issue as to surprise to the defendant or expanding both the factual and legal issues at trial.

Such is not the case here. First, plaintiff does not present new theories of recovery, but in fact, raises new causes of action which have not been previously raised in or explored through discovery. The proposed amendment to the complaint alleges that plaintiff was discriminated against in the assignment of coaching positions in 1980 and 1981. These are entirely new matters unrelated to the proceedings which have already taken place in this case. Indeed, the events which give rise to the amendment took place more than four years after the events which give rise to the original complaint. Thus, I suggest that this case is not controlled by *Tefft* and *Howard.*

I suggest that, after balancing all the factors, the delay which would result from granting this motion and the additional expense which would be incurred due to further discovery, establishes that defendant would be substantially prejudiced by granting this motion. Where there has been no good explanation for undue delay in seeking amendment, motions to amend complaints, which were filed well into or after completion of the discovery process, and

which would necessitate further expense and discovery on the part of the opposing party, or greatly modify the issues to be tried, have been routinely denied. *Murphy v. White Hen Pantry Co.,* 691 F.2d 350 (7th Cir.1982); *Daves v. Payless Cashways, Inc.,* 661 F.2d 1022 (5th Cir.1981); *Roberts v. Arizona Board of Regents,* 661 F.2d 796 (9th Cir.1981); *Jordan v. County of Los Angeles,* 669 F.2d 1311 (9th Cir.1982); *Addington v. Farmers Elevator Mutual Insurance Co.,* 650 F.2d 663 (5th Cir.1981); *Goss v. Revlon, Inc.,* 548 F.2d 405 (2d Cir.1976); *Head v. Timken Roller Bearing Co.,* 486 F.2d 870 (6th Cir.1973); *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir.1973); *Watts v. Grand Union Co.,* 36 FRS 2d 364 (N.D.Ga. 1982); *Copley v. Morality in Media,* CCH Emp.Prac., ¶ 31,569 (S.D.N.Y.1981); *Conroy Datsun Ltd. v. Nissan Motor Corp.,* 506 F.Supp. 1051 (1980). As was noted by the Fifth Circuit Court of Appeals:

> At some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive. Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time. While we must give a party a fair chance to present claims and defenses, we also must protect "a busy district court [from being] imposed upon by the presentation of theories seriatim." *Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1025 (5th Cir.1981).

The case at bar has suffered from neglect since its inception. A wrong turn has been taken at every fork in the road. The defendant should not be forced to continue to pay for this haphazard method of litigation.

I, therefore, suggest that an amendment of this complaint at this stage of the proceedings, which would present new factual basis and legal theories for recovery, would result in substantial prejudice to the defendant. Accordingly, for the reasons stated above and after balancing the equities between the parties, I respect-

fully recommend that plaintiff's motion to amend the complaint be denied.[7]

## V

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's motion to amend the complaint be denied. I further recommend, as previously stated, that defendant's motions to dismiss both counts of the complaint be granted in that this action was untimely filed and that judgment be entered for defendant.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, parties are hereby notified that within 10 days after being served with a copy of this recommendation they may serve and file specific, written objections to the proposed findings and recommendations. Further, either party may respond to another party's objections within 10 days after being served with a copy thereof.

---

**7.** Defendant's claim that amendment would be futile is sound only as to the allegation that its actions violated plaintiff's rights as a third party beneficiary to an agreement not to discriminate between the defendant and the United States. *See,* Part III of this report, *supra.* The issue of whether plaintiff was required to present this retaliation claim to the EEOC for investigation prior to raising the issue in this Court need not be discussed here in light of the recommended disposition. *But see, Waiters v. Parsons,* 729 F.2d 233, 237–38 (3rd Cir.1984); *Gupta v. East Texas University,* 654 F.2d 411 (5th Cir.1981). There appears to be no claim by defendant that an amendment allowing the allegations to stand under the Elliott-Larsen Act would be futile.